IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID A. WATT,                                    CV. 08-6338-MA

               Plaintiff,                     OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

              Defendant.

KATHRYN TASSINARI
ROBERT BARON
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

     Attorneys for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

WILLY M. LE
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

     Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff David A. Watt seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Plaintiff contends he became disabled on June 20, 2002, due to post traumatic stress disorder (PTSD) and depression.  His claims were denied initially and on reconsideration.  The Administrative Law Judge held a hearing on April 27, 2006 and issued an unfavorable decision on August 24, 2006.  The Appeals Council denied plaintiff's request for review on August 29, 2008.  The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

Plaintiff seeks an order from this court reversing the Commissioner's final decision and remanding the case for immediate payment of benefits.  For the reasons that follow, I AFFIRM the final decision of the Commissioner.

## FACTUAL BACKGROUND

At the hearing, plaintiff was 57 years old.  He has a high school diploma and has attended trade school, obtaining certification in printing in 1971-72.  Plaintiff has past relevant work as a management aid, materials handler, offset pressman, and telephone solicitor.  Plaintiff served in the United States Army

from May 1968 to December 1969 as a radio teletype operator, and was honorably discharged.  Plaintiff has a 100 percent disability rating by the Department of Veterans Affairs (VA).

Plaintiff was employed for many years (1973-1992) in the printing industry in California, but lost that job when the printing company dissolved.  Plaintiff has a history of alcohol dependence. Plaintiff reported that he was unemployed and homeless in 1992, and in 1993 became a heavy user of methamphetamine. Plaintiff sought treatment for his polysubstance abuse, including spending some periods in inpatient recovery programs.  (Tr. 668.)

In approximately 1996, plaintiff, again sober, worked for the Salvation Army as a resident house manager in exchange for room and board.  Plaintiff held that job until he relapsed into drug use in 2002.  Plaintiff then moved to Oregon in 2002 or 2003.  In approximately July 2003, plaintiff began using alcohol, and was admitted to the Roseburg VA Medical Center mental health department for 10 days. (Tr. 759.)  Plaintiff then enrolled in a 30 day inpatient drug and alcohol treatment program.  Upon arriving in Oregon, plaintiff was homeless, living at the Roseburg Mission. Plaintiff has been sober since September 2003.  When plaintiff received his VA disability/pension in November 2004, plaintiff purchased a small house and lives there with his two cats.  (Tr. 762.)

Plaintiff alleges onset of disability in June 2002.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform. Yuckert, 482 U.S. at 141-42. "To establish eligibility for Social Security disability benefits, a claimant has the burden to prove he is disabled." Valentine v. Commissioner, Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. See 20 C.F.R. §§ 404.1520(b), 404.1571 et seq.

At step two, the ALJ found that plaintiff had the following severe impairments:  intermittent affective disorder and alcohol dependence currently in remission.  See 20 C.F.R. §§ 404.1520(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform work at all exertional levels with the following

limitations:  he must not work continuously or intensively with the general public; he must not work in close proximity to co-workers in a teamwork setting; and there cannot be intensive supervision or oversight.  See 20 C.F.R. §§ 404.1527, 404.1529.

At step four, the ALJ found plaintiff was not capable of performing his past relevant work (PRW).  See 20 C.F.R. §§ 404.1565.

At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that plaintiff can perform.  See 20 C.F.R. §§ 404.1560(c), 404.1566.  Accordingly, the ALJ concluded that plaintiff is not disabled under the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the ALJ committed several errors: (1) failing to provide clear and convincing reasons to discredit his testimony; (2) failing to properly assess the physician's opinions; (3) failing to credit the disability rating by the Veteran's Administration; (4) erroneously concluding that he is capable of performing other work in the national economy.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. §

405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).
"Substantial evidence means more than a mere scintilla but less
than a preponderance; it is such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." <u>Id.</u>  The
court must weigh all the evidence, whether it supports or detracts
from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d
771, 772 (9th Cir. 1986).   The Commissioner's decision must be
upheld, even if the evidence is susceptible to more than
one rational interpretation. <u>Andrews</u>, 53 F.3d at 1039-40.  If the
evidence supports the Commissioner's conclusion, the Commissioner
must be affirmed; "the court may not substitute its judgment for
that of the Commissioner."  <u>Edlund v. Massanari</u>, 253 F.3d 1152,
1156 (9th Cir. 2001).

### DISCUSSION

I.  **Plaintiff's Credibility**.

Plaintiff argues that the ALJ failed to provide clear and
convincing evidence for rejecting his testimony about the degree to
which his depression and PTSD incapacitate him.  Plaintiff asserts
that he is unable to work because of his depression and PTSD.

**A. Plaintiff's testimony.**

At the hearing, plaintiff offered the following relevant
testimony.  Plaintiff explained that he had served in Vietnam from
1968 to 1969.  Plaintiff testified that he has no friends now, but
that he had a few friends at the Mission when he was living there.

Plaintiff testified that when he wakes up in the middle of the night, he will look out the windows. Plaintiff stated that he enjoys walking a mile each day to get the mail. (Tr. 763.) Plaintiff described that occasionally he would look over his shoulder to ensure no one was "going to come after me" when walking with his girlfriend. (Tr. 764.) Plaintiff testified that he has panicking and anxiety feelings, and expressed some concern about living on the street. However, plaintiff stated that "I'm a little bit more secure now" after receiving his VA disability. (Tr. 766.)

When asked about his feelings of insecurity, plaintiff indicated that his feeling have impacted him more physically, causing him stomach problems. (Tr. 767.) Plaintiff testified that he did not have any problem working around people, and feels he's good at "people work" such as his job at the Salvation Army where he checked in eight to ten individuals each day to the transitional housing unit. (Tr. 769, 738.) Given plaintiff's ability to work with people, the ALJ inquired why plaintiff felt he was unable to work full time. (Tr. 770.) Plaintiff responded that he did not have any trouble with the people, just supervisors. (Id.) And, when asked by his attorney at the hearing whether his job became more stressful or whether he had difficulty managing workflow, plaintiff responded "No, I wouldn't say that." (Tr. 787-88).

Plaintiff stated that he was upset in 1999 by the death of his niece, who committed suicide, and that his mother was dying of

cancer.  He stated that he was extremely affected by the events of 9/11 and he had always been able to cope until 1999.

When asked about the particular trauma that caused his PTSD, plaintiff testified that a friend (Mr. Hargas) was shot by friendly fire.  Plaintiff described that the friend and others were sitting around, and the gun went off, hitting his friend in the face. (Tr. 777.)   Plaintiff admitted that he was across the street when the incident happened.

**B. Standards.**

In deciding whether to accept subjective symptom testimony about a claimant's alleged disability, such as pain or depression, an ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529, 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  Here, there is no dispute that plaintiff presented objective medical evidence in support of his claim of intermittent affective disorder, depression and alcohol dependence in current remission.

At the second stage of the credibility analysis, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Smolen, 80 F.3d at 1284; see also Morgan v. Commissioner of the

Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Dodrill v.
Shalala, 12 F.3d 915, 918 (9th Cir. 1993).   The ALJ must make
findings that are "sufficiently specific to permit the reviewing
court to conclude that the ALJ did not arbitrarily discredit the
claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th
Cir. 1995).   Clear and convincing reasons may include medical
evidence tending to discount the severity of the claimant's
subjective claims. Smolen, 80 F.3d at 1283.   The ALJ may consider
the claimant's daily activities, work record, and the observations
of physicians and third parties with personal knowledge of the
claimant's functional limitations. Smolen, 80 F.3d at 1284; SSR
96-7p, 1996 WL 37186.   The ALJ also may consider prior inconsistent
statements concerning the claimant's symptoms and any inconsistency
between the claimant's daily activities and the degree of
disability he alleges. See Rollins v. Massanari, 261 F.3d 853,
856-57 (9th Cir. 2001).   Credibility determinations are reserved to
the ALJ. Morgan, 169 F.3d at 599; Andrews, 53 F.3d at 1043.

   **C.  Analysis.**

   I conclude that the ALJ provided clear and convincing reasons,
citing specific record evidence, for not fully crediting
plaintiff's testimony.[1] Here, the ALJ identified objective medical
evidence which did not support the severity of plaintiff's

_____

   [1]There is no evidence of malingering in this case.

complaints.  For instance, the ALJ detailed a medical record dated March 30, 2005, in which plaintiff's depression was considered mild.  Although plaintiff was considered anxious, it was attributed to him stopping his medications.  The medications were restarted, and his symptoms improved—plaintiff reported on April 27, 2005 that his symptoms had resolved.  In that visit, plaintiff reported no side effects from the medications, and indicated that his mood was at a 9 out of 10 (with 10 being high) and his anxiety at a 1 out of 10 (with 10 being high).  As the ALJ noted, at that April 27 medication review, plaintiff denied any difficulties sleeping, reported no nightmares or hyperarousal, and that he was doing well with his girlfriend.  To be sure, the mental health nurse practitioner described plaintiff's PTSD as "chronic and currently in early remission" and plaintiff's Major Depressive Disorder "in Full remission." (Tr. 708.)

And, the ALJ detailed another medication review several months later, on October 13, 2005, wherein plaintiff stated that his depression and anxiety were under good control. At that time, plaintiff reported that his mood was at an 8 out of 10, and his anxiety at a 2 out of 10.  Again, the mental health nurse practitioner described plaintiff's PTSD as being in early remission, and his Major Depressive Disorder in full remission. (Tr. 705.)

The ALJ also cited plaintiff's medical records which undercut the severity of plaintiff's alcohol dependence, namely, that plaintiff would be celebrating one year's sobriety on August 26, 2004.  And, the ALJ noted that plaintiff had been successfully discharged from a Continuing Care program in May 2004 with a diagnosis of alcohol dependence in early full remission.  These medical records were consistent with plaintiff's hearing testimony, in which plaintiff stated that he last had a drink in September 2003.  To be sure, when the claimant's own medical records undercut his assertions, the ALJ may rely on that contradiction to discredit the claimant.  Morgan, 169 F.3d at 600; Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008).

The ALJ also discussed at length the reasons for determining that plaintiff's PTSD was not as severe as alleged by plaintiff. For example, the ALJ noted inconsistencies between plaintiff's hearing testimony, and what he described to Dr. Allan Kirkendall, an examining psychiatrist at the Roseburg VA Medical Center who first diagnosed plaintiff as suffering PTSD in February 2004. Plaintiff bases his PTSD in large part on the shooting incident involving Mr. Hargas.  The ALJ discounted plaintiff's testimony as follows:

> What is striking is the markedly different answers the
> claimant gave to Dr. Kirkendall (sic) and his testimony
> at the hearing.  He told Dr. Kirkkendall that he was
> sitting next to Mr. Hargas at the time, but wrote home to
> his family that he was sitting in his "hootch" across the

street.  He testified that although he thinks about the
event every day, it wasn't "freaking him out."  The
claimant told the doctor that he has flashbacks when
exposed to helicopter[s].  He testified at the hearing
that helicopters flying overhead bother him but he
doesn't "freak out."  In fact, he enjoys flying in
helicopters. (Tr. 21.)

Inconsistent statements about symptoms are an appropriate basis

upon which to discredit the claimant.  Rollins, 261 F.3d at 856-57.

Because of these inconsistencies, the ALJ found his testimony about

the limiting effects of his PTSD to be less severe than plaintiff

alleged.

Plaintiff argues that the ALJ improperly discredited his

testimony about how PTSD impacted his ability to work, given that

plaintiff testified about verbally confronting supervisors.  I

disagree.  The ALJ included limitations on working closely with the

general public, co-workers and supervisors in the RFC.  Contrary to

plaintiff's assertion, the ALJ did not completely reject

plaintiff's testimony, but rather incorporated those portions which

he deemed credible into the RFC.

The ALJ's credibility findings also detailed numerous

inconsistencies between plaintiff's statements concerning the

limiting effects of his symptoms and his activities of daily

living.  For example, the ALJ remarked that plaintiff testified

that he walks a mile to pick up his mail, and stays active riding

his bicycle.  The ALJ also noted plaintiff's ability to live alone

and take care of his cats.  The ALJ indicated that in August 2004,

plaintiff was volunteering in the escort office twice a week to offset his tendency to isolate, and that he was looking forward to attending his son's wedding and being a grandfather. (Tr. 730, 738.) The ALJ described plaintiff's work at the mission in 2003 as including responsible jobs such as driving to pick up donations, and ultimately checking-in residents. (Tr. 492, 308.) The ALJ also noted that in 2003, plaintiff stated he enjoyed working a full day instead of "sitting around with nothing to do." (Tr. 491.) Such inconsistencies are an appropriate basis upon which an ALJ may rely when discrediting the claimant. Morgan, 169 F.3d at 600.

I conclude that when the above are taken together, the ALJ has provided clear and convincing support, backed by substantial evidence in the record, for rejecting plaintiff's subjective complaint testimony. The ALJ identified specific record evidence that undermined plaintiff's contentions that his PTSD, depression and alcohol dependence were so severe that he was unable to work. Valentine, 574 F.3d at 693.

## II. **Physician's Opinions**.

According to plaintiff, the ALL erred in rejecting the opinions of examining physicians Allan Kirkendall, Ph.D., Benjamin C. Nolan, Ph.D., and Thomas Morelli, M.D., who diagnosed plaintiff with PTSD. Plaintiff submits that the ALJ failed to provide clear and convincing reasons for rejecting their PTSD diagnoses in favor

of that provided by the non-examining, testifying psychologist Robert W. Davis, Ph.D.

The Commissioner argues that the ALJ provided adequate reasons for rejecting the examining physicians' opinions of PTSD, and contends that despite rejecting the PTSD diagnosis, the ALJ nevertheless properly included plaintiff's alleged PTSD limitations into the residual functional capacity assessment.  I agree.

**A.    Evidence.**

Plaintiff was evaluated for PTSD by Drs. Kirkendall and Nolan in connection with his VA application for disability benefits.  On February 12, 2004, plaintiff underwent a psychological evaluation for PTSD with Dr. Kirkendall, a VA staff psychologist.  Dr. Kirkendall administered the Mississippi Scale for Combat-Related PTSD, and diagnosed plaintiff with PTSD, chronic and severe.  In the interview, plaintiff reported that his distress from PTSD-related symptoms was at an 8-9 out of 10, with 10 being the worst. Dr. Kirkendall assigned plaintiff a GAF of 35.  (Tr. 483-84.)

On April 18, 2004, plaintiff was evaluated by Dr. Nolan, another VA staff psychologist for a Compensation and Pension examination.   Dr. Nolan examined plaintiff's medical records, including the evaluation by Dr. Kirkendall.  Dr. Nolan administered the Mississippi Scale for Combat-related PTSD and the Beck Depression Inventory.  Dr. Nolan diagnosed plaintiff with Major Depressive Disorder, recurrent and severe and PTSD, chronic and

severe.  Dr. Nolan stated that he concurred with Dr. Kirkendall's February 2004 report based on plaintiff's symptoms of "social isolation, nightmares, flashbacks, and the periodic use of substances to control his thoughts about his experiences in Vietnam." (Tr. 672.)

Robert W. Davis, a psychologist and independent medical advisor, was called as a witness by the ALJ to testify at the hearing.  Dr. Davis reviewed all of plaintiff's medical records, including those from examining physicians Dr. Kirkendall, Dr. Nolan, and consulting physician Dr. Peter LeBray.  Dr. Davis interviewed plaintiff at the hearing about his PTSD and depression. When Dr. Davis asked plaintiff about the incident which plaintiff claims caused his PTSD, plaintiff stated that he thinks about Vietnam everyday, although it does not freak him out. (Tr. 779-80).  When asked by Dr. Davis whether plaintiff experiences any disturbing memories of Vietnam, plaintiff testified that he feels scared for individuals fighting in Iraq. (Tr. 780.)

When Dr. Davis inquired about what is interfering with plaintiff's ability to work, plaintiff stated that his anger is preventing him from working.  Dr. Davis asked plaintiff how his anger is interfering with his work, plaintiff described a disagreement with his supervisor while working at the mission, a situation where plaintiff confronted a supervisor angrily, and that plaintiff stated that he was afraid he would attack the supervisor.

15 - OPINION AND ORDER

(Tr. 782.)    Plaintiff described another disagreement with a different supervisor, which resulted in plaintiff quitting that job. (Tr. 784-85.)

After listening to plaintiff's hearing testimony and interviewing plaintiff directly, Dr. Davis opined that plaintiff's symptoms did not support a diagnosis of PTSD because they lacked the "cardinal feature" of re-experiencing the traumatic event. (Tr. 793, 795.) Dr. Davis also opined that plaintiff may suffer from some PTSD symptoms, but those symptoms did not preclude his ability to work. Dr. Davis discussed that he disagreed with a GAF score of 35 assigned by Dr. Kirkendall, and discussed the wide range of GAF scores from various VA staff (35 to 60), and thought that plaintiff's symptoms supported a GAF of 50, which may indicate some employment difficulties, but would not render him unemployable. (Tr. 792, 800, 804.)

**B. Standards.**

To reject the *uncontroverted* opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss, 427 F.3d at 1216. Generally, "the opinion of an examining physician is entitled to greater weight

than the opinion of a nonexamining physician." <u>Ryan v.</u>
<u>Commissioner of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008). The
opinions of a nonexamining, testifying medical advisor may serve as
substantial evidence, when it is based on independent clinical
findings; "it is then solely the province of the ALJ to resolve the
conflict." <u>Andrews</u>, 53 F.3d at 1041. When the nontreating
source's opinion is *not* based on independent clinical findings, the
opinion of the treating physician or examining physician may only
be rejected for specific, legitimate reasons, based on substantial
evidence in the record. <u>Id.</u>; <u>Morgan</u>, 169 F.3d at 600.

**C. Analysis.**

The Commissioner argues that Dr. Davis' opinion was an
alternative diagnosis premised upon an "independent finding," that
being plaintiff's hearing testimony. The Commissioner contends
that Dr. Davis' opinion based on this independent information-much
of which contradicted Dr. Kirkendall's observations of plaintiff's
limitations-by itself constitutes substantial evidence sufficient
to disregard the examining physicians opinions.

I need not decide in this instance whether Dr. Davis' opinion
alone is substantial evidence to justify rejecting the examining
physicians' opinions, because I conclude that the ALJ has
articulated sufficient specific, legitimate reasons for rejecting

them.[2]  Here, the ALJ was presented with legitimate conflicting
medical opinions.  To be sure, Dr. Davis appeared at the hearing,
specifically questioned plaintiff about the impact of his symptoms
on his ability to work, and was subject to cross-examination by
plaintiff's counsel.  Indeed, in response to Dr. Davis' questions
about how his PTSD limited his ability to work, plaintiff responded
that it was his anger towards his supervisors that limited him.
And, when asked by Dr. Davis to describe any disturbing memories he
had from Vietnam that interfered with his ability to work, he
responded only that he was fearful for soldiers now in Iraq.  The
ALJ is responsible for resolving conflicts in the medical evidence,
and the decision must be upheld where the evidence is susceptible
to more than one rational interpretation.  Andrews, 53 F.3d at
1039-40; Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

     Here, the ALJ determined that Dr. Davis' opinion was the more
persuasive.  The ALJ stated that he relied on Dr. Davis' opinion

---

[2]Plaintiff offers no separate legal or factual analysis for
his contention that the ALJ erred in rejecting the opinions of
Dr. Nolan and Dr. Morelli.  Rather, plaintiff's arguments center
on the ALJ's treatment of Dr. Kirkendall's opinion.  The ALJ did
not discuss the opinions of Dr. Nolan or Dr. Morelli in the
decision.  However, it is clear that the ALJ rejected Dr.
Kirkendall's opinion because it was based on a PTSD diagnosis
with which he disagreed.  In light of plaintiff's conclusory
argument, and because the opinions of Drs. Nolan and Morelli
mirrored those of Dr. Kirkendall, this court may reasonably infer
that the ALJ rejected those opinions for the same reasons.
Baston v. Commissioner of the Soc. Sec. Admin., 359 F.3d 1190,
1193 (9th Cir. 2004); Magallanes v. Bowen, 881 F.2d 747, 755 (9th
Cir. 1989).

that plaintiff's symptoms did not support a diagnosis of PTSD because Dr. Davis did not observe any evidence that plaintiff was "re-experiencing of the trauma like it is occurring in the present." (Tr. 22.) Instead, Dr. Davis believed that plaintiff suffered symptoms of PTSD, such as the occasional intrusive recollection, but that such symptoms did not interfere with his ability to work. The ALJ was also persuaded by Dr. Davis' testimony that there was no evidence of significant cognitive disturbances that would warrant a GAF of 35, as described by Dr. Kirkendall.[3] The ALJ articulated his reasons for his interpretation and made findings accordingly.

Moreover, Dr. Davis' opinion is supported by other evidence in the record. Andrews, 53 F.3d at 1041. For example, as detailed by the ALJ and discussed above, plaintiff's medical records from March 2005 to October 2005 indicate that plaintiff's PTSD and depression had improved, and was described by his health care providers as in remission. Additionally, plaintiff's medical records were reviewed by Peter LeBray, Ph.D., for the Social Security Administration, who indicated in a residual functional capacity assessment that plaintiff was only moderately limited in one category of 20, and not significantly limited in the remaining 19. (Tr. 638-40.)

---

[3]As noted above, to the extent that the ALJ concluded plaintiff suffered symptoms of PTSD that made it difficult for him to work with supervisors, those limitations were incorporated into the RFC.

19 - OPINION AND ORDER

Additionally, in the "Psychiatric Review Technique," Dr. LeBray indicated that plaintiff suffered mild restrictions in Activities of Daily Living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 642-51, 686.)

Furthermore, it is clear from the decision that the ALJ discounted Dr. Kirkendall's opinion because it was based largely on plaintiff's self-reported PTSD symptoms, which the ALJ found to be less than credible.  Indeed, Dr. Kirkendall's February 12, 2004 conclusion that plaintiff's PTSD caused him significant impairment in occupational functioning was premised largely upon plaintiff's descriptions of his symptoms.  As discussed above, the ALJ determined plaintiff's symptoms to be inconsistent with his hearing testimony, his medical record, and his activities of daily living. A physician's opinion of disability which is premised upon the claimant's own accounts of his symptoms and limitations may be disregarded "where those complaints have been 'properly discounted.'"  Morgan, 169 F.3d at 602; Fair v. Bowen, 885 F.3d 597, 605 (9th Cir. 1989).  Accordingly, the ALJ did not err in discounting Dr. Kirkendall's opinion based on this fact.

Plaintiff argues that the ALJ should have provided a more detailed response to Dr. Kirkendall's opinion, because his report "itemized several ways" in which plaintiff re-experienced the

traumatic event.  (Plaintiff's Brief (#16), p. 18.)  To the extent that the ALJ could have been more precise, a detailed analysis is always appreciated.  Nevertheless, the ALJ adequately explained the inconsistencies between plaintiff's hearing testimony about his nightmares, flashbacks and intrusive thoughts, compared to those plaintiff provided Dr. Kirkendall.

In sum, I conclude that when taken together, the ALJ has provided specific, legitimate reasons for rejecting the opinions of the examining physicians.  Valentine, 574 F.3d at 692; Andrews, 53 F.3d at 1043.  The ALJ's reasons are supported by substantial evidence in the record.

## III. VA Disability Rating.

Plaintiff contends that the ALJ erred in failing to credit the VA disability rating of 100 percent unemployability based on plaintiff's PTSD with depression.  Plaintiff argues that the rating should be accepted as determinative.

Generally, the Commissioner must give "great weight" to the VA's disability rating because of the marked similarity between the two federal disability programs.  McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).  However, because the criteria used by these programs for evaluating disability are not identical, the Commissioner may give less weight to a VA disability rating by providing "persuasive, specific, valid reasons for doing so that are supported by the record."  McCartey, 298 F.3d at 1076.

In this case, the ALJ discussed the VA disability rating, dated November 16, 2004, stating that it was entitled to less weight because it was "inconsistent with the record as a whole." The ALJ explained in that paragraph that the VA disability rating was based largely on plaintiff's PTSD diagnosis. In the next two paragraphs, the ALJ went on to explain why it disagreed with the opinion of Dr. Kirkendall, and the PTSD diagnosis. Therefore, it is clear to this court that the ALJ rejected the VA disability rating because it was premised on an opinion that the ALJ rejected. As discussed above, I have concluded that the ALJ offered specific and legitimate reasons, supported by substantial evidence in the record for giving Dr. Kirkendall's opinion less weight. <u>Valentine</u>, 574 F.3d at 695. Thus, the ALJ could accord the VA disability rating less weight on that basis.

Additionally, the ALJ could give the VA disability rating less weight as being inconsistent with record as a whole, because the ALJ had information which the VA did not. <u>Id.</u> In its decision, the VA examined medical records from the Roseburg VAMC from February 2004 to April 2004, including the examination by Dr. Kirkendall. (Tr. 76.) In the present determination, the ALJ reviewed and discussed plaintiff's medical records from 2003 to 2005, the latest of which documented improvement in plaintiff's PTSD and depression. As the Ninth Circuit has recently held, the "acquisition of new evidence or a properly justified reevaluation

22 - OPINION AND ORDER

of old evidence constitutes a 'persuasive, specific, and valid reason[] . . . supported by the record' under <u>McCarty</u> for according little weight to a VA disability rating." <u>Valentine</u>, 574 F.3d at 695.  Accordingly, I conclude that the ALJ did not err in giving the VA disability rating less weight.

**IV.  <u>Vocational Expert Testimony</u>.**

Plaintiff argues that the ALJ has failed to meet its burden at step five because the hypothetical assumptions upon which the vocational expert relied were flawed.  At step five of the sequential evaluation, the burden shifts to the Commissioner to establish that there are jobs in the national economy that the claimant can do.  <u>Andrews</u>, 53 F.3d at 1043.  The Commissioner can satisfy this burden by eliciting testimony from a vocational expert (VE) to determine whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions. <u>Tackett</u>, 180 F.3d at 1103-04.  The hypothetical posed to the VE must accurately reflect all of the claimant's limitations. <u>Bayliss</u>, 427 F.3d at 1217.

The RFC finding and the hypothetical posed to the vocational expert included only limitations based on medical assumptions supported by substantial evidence in the record that reflected all of plaintiff's limitations.  These limitations were those that the ALJ found to be credible and are supported by substantial evidence

in the record.   It was proper for the ALJ to rely on the VE's answer.  Id. at 1217-18.

### CONCLUSION

Based on the foregoing, the ALJ's decision that plaintiff did not prove disability and is not entitled to disability insurance benefits under Title II of the Social Security Act is based on correct legal standards and supported by substantial evidence.  The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 15__ day of SEPTEMBER, 2009.


_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge